UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dawn Ingraham,                                               Civ. No. 20-1857 (PAM/JFD)

                    Plaintiff,

v.                                                **MEMORANDUM AND ORDER**

Pete Buttigieg, in his official
capacity as Secretary of United
States Department of Transportation,

                    Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiff Dawn Ingraham was a Terminal District Manager (TDM) for the Federal Aviation Administration's Northern Planes District, based at MSP airport. In that role, she supervised air-traffic control managers (ATMs). Ingraham had authority over 18 air-traffic control facilities in Minnesota, North and South Dakota, Nebraska, Iowa, and Wisconsin. She held this position for more than fifteen years, until, according to her claims, the harassment and discrimination she experienced forced her to take extended medical leave and then early retirement.

The alleged harassment began with a December 2016 speech by the Deputy Vice President of Air Traffic Services, Tim Arel, at a training for new air-traffic-control managers. Ingraham learned about his remarks from one of the ATMs she supervised who had attended the training. According to the ATM, in response to a question about

converging runway operations (CROs) [1]—a contentious subject at the FAA—Arel stated

that he did not trust any of the Minneapolis tower managers because they had all lied to

him, and if he had the chance, he would fire them all.  Arel did not mention any employees

by name, but Ingraham interpreted these comments as an attack on her.  She claims that

this attack was motivated by gender because she and her assistant TDM comprised the only

all-female TDM team in the FAA.

Ingraham filed an administrative discrimination complaint shortly after learning

about Arel's remarks.  In this complaint, she claimed that Arel's comments constituted

discrimination against her based on her sex and her age.  In April 2017, Ingraham amended

the complaint to include allegations that Nora Bialek, who was the Director of the Central

Service Area-North and Ingraham's supervisor, discriminated against her based on age,

sex, and in reprisal for the discrimination complaint against Arel.  According to Ingraham,

in March 2017, Bialek discriminatorily denied Ingraham's request for additional staff in

anticipation of the 2018 Super Bowl in Minneapolis.  Ingraham also contends that Bialek

demeaned her by asking Ingraham to inform Bialek about Super Bowl planning meetings

and by reminding her to track overtime and other expenses associated with the Super Bowl.

Finally, according to Ingraham, Bialek discriminatorily failed to investigate a security issue

that Ingraham brought to Bialek's attention in March 2017, involving photos of the tower

that an air-traffic controller posted on his Facebook page two years earlier, but had

subsequently removed.

---

[1] CROs are runways that are aligned so that the departure paths cross, but the runways themselves do not physically intersect.

In May 2017, Ingraham was assigned to a new direct supervisor, Paul Litke, the new Acting Deputy Director of the Central Service Area-North.  According to the FAA, at this time the agency was transitioning to a new "general manager" concept that would consolidate duties of TDMs like Ingraham so that they oversaw both the lower-level air traffic control at a facility like MSP and higher-level air traffic, known as "Enroute."  Part of the new concept required these managers to move from airport control towers to separate offices; in addition, the new concept would eliminate some TDM and assistant TDM positions.  There is no allegation that this reorganization would have eliminated Ingraham's position, although the evidence shows that the assistant TDM position under Ingraham would be eliminated in the new organization.

Ingraham complains of a host of allegedly discriminatory actions Litke took, ostensibly at Arel's direction and in retaliation for Ingraham's complaints against Arel and Bialek.  She contends that Litke's investigation into two employee hotline complaints was discriminatory, that Litke forced her to move out of the control tower to a different office, that he did not involve her sufficiently in the search for a new temporary assistant TDM to replace her retiring assistant TDM, and that she was not invited to meetings regarding new virtual-reality tools for air-traffic controllers.

Ultimately, Ingraham requested and was granted more than 10 months of sick leave, from February 20 through December 31, 2018.  She claims that the allegedly discriminatory treatment necessitated this leave.  At the end of 2018, Ingraham took voluntary early retirement and never returned to work.

After engaging in administrative procedures for her employment-discrimination

claims, Ingraham filed this lawsuit.  Her Complaint raises four counts under Title VII:  sex discrimination, hostile-work-environment sexual harassment, interference-with-work-performance sexual harassment, and retaliation.  She does not raise any claim related to her previous complaints of age discrimination.  The agency seeks summary judgment on all of Ingraham's claims.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party."  Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

"The ultimate question in every employment discrimination case . . . is whether the plaintiff was the victim of intentional discrimination."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 153 (2000).  Title VII "prohibits employers from taking certain actions 'because of' sex."  Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1739 (2020).  As a result, a Title VII plaintiff must establish that "a particular outcome would not have happened 'but for' the" alleged discriminatory motive of her employer.  Id.  As discussed

4

more fully below, Ingraham has failed to make any showing in this regard, and her claims therefore fail.

### A.     Sexual Harassment

>    To prevail on a hostile work environment claim, a plaintiff must prove the following five elements: (1) that she is a member of a protected group; (2) that she was the subject of unwelcome sexual harassment; (3) that a causal nexus existed between the harassment and protected group status; (4) that harassment affected a term, condition, or privilege of employment; and (5) that her employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

Hales v. Casey's Mktg. Co., 886 F.3d 730, 735 (8th Cir. 2018) (citing Klein v. McGowan, 198 F.3d 705, 709 (8th Cir. 1999)). "[T]he plaintiff . . . must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination because of sex.'" Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (quoting Title VII) (internal alterations omitted). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. at 80 (quotation omitted).

Ingraham has failed to establish any genuine issue of fact on her claims of sexual harassment. To begin, she is "unable to provide any evidence, either directly or by inference, beyond her own speculation, that her alleged mistreatment was due to her protected status." Bradley v. Widnall, 232 F.3d 626, 632 (8th Cir. 2000) (abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011)). And while the Court does not expect sexual-harassment plaintiffs to produce smoking-gun evidence of a discriminatory motive based on sex, there must be some evidence from which

a jury could conclude that sex was the motivating factor behind the actions of which a plaintiff complains. Here, there is no such evidence.

Although Ingraham points to Litke's use of "brother" to refer to male colleagues, with no corresponding nickname for female colleagues, and his suggestion of an "Atta Boy" award for high performers, this evidence does not indicate the kind of gender-based animus necessary to support Ingraham's claims. And indeed, Ingraham's evidence, including Arel's allegedly discriminatory comment that set off what Ingraham views as a cascade of discrimination, retaliation, and harassment is susceptible of many interpretations. And while Ingraham may have established that certain actions and comments were directed at her, she has not demonstrated that any of these were directed at her because she is a woman.

Moreover, even if Ingraham had come forward with sufficient evidence to raise a question as to the causal nexus between the alleged harassment and her sex, she has not established that the conduct was "sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive and that actually altered the conditions of [her] employment." Crist v. Focus Homes, Inc., 122 F.3d 1107, 1111 (8th Cir. 1997).

To be actionably severe or pervasive, the harassment must objectively create a hostile work environment. Courts must examine all the facts and circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S.

17, 23 (1993).  The "severe or pervasive" threshold is a high one, requiring a showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult."  Id. at 21 (quotation omitted).  Ingraham must prove that the conduct was "extreme in nature and not merely rude or unpleasant."  Nitsche v. CEO of Osage Valley Elec. Coop., 446 F.3d 841, 846 (8th Cir. 2006).

Ingraham purports to raise separate claims for a hostile work environment and interference with work performance, claiming that a hostile environment that interferes with work performance does not require the same type of "severe or pervasive" environment as a hostile-environment claim does.  She cites one case, Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986), as support for this assertion.  But Meritor does not stand for this proposition, and a search has revealed no other support for a freestanding interference-with-work-performance claim.  Rather, whether sexual harassment interferes with an employee's work performance is one element of a sexual-harassment claim under Title VII.  See Harris, 510 U.S. at 23 (noting that a court should determine whether the work environment, among other things, "unreasonably interferes with an employee's work performance").  Ingraham's insistence that she need not prove a severe or pervasive hostile environment is without merit.

Viewing the evidence in the light most favorable to Ingraham, she has not met her burden to establish a severe or pervasive hostile environment.  Although Ingraham apparently found the conduct subjectively severe—she contends that it forced her to take medical leave—her subjective beliefs do not control.  "To be actionable, the work environment must be both objectively hostile to a reasonable person and subjectively

7

hostile to the victim." Warmington v. Bd. of Regents of Univ. of Minn., 455 F. Supp. 3d 871, 883 (D. Minn. 2020) (Tostrud, J.).

Ingraham's claims here are similar to those in a case in which an Air Force employee alleged that "her supervisory duties were curtailed, that she was left out of the decision-making process, treated with disrespect, and subjected to false complaints." Bradley, 232 F.3d at 631. In affirming the grant of summary judgment against the employee, the Court of Appeals held that, although "the conduct . . . may have resulted in a frustrating work situation," it was not "so severe or pervasive as to have affected a term, condition, or privilege of her employment." Id. at 631-32. The same is true of Ingraham's allegations, and summary judgment is warranted on her sexual-harassment claims.

**B.      Discrimination**

Ingraham's discrimination claim is analyzed using the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). She bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Specifically, in this case she must establish that: (1) she is a member of a protected group, (2) she was meeting her employer's legitimate employment expectations, (3) she suffered an adverse employment action, and (4) "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010).

If Ingraham establishes a prima facie case of discrimination, Defendant must rebut that showing by presenting evidence of a legitimate, non-discriminatory reason for the

adverse action.  Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1245 (8th Cir. 1998).  If

Defendant presents such evidence, Ingraham must then prove that the reasons offered by

Defendant are pretextual and that illegal discrimination was a motivating reason for

Defendant's actions.  Id.

"An adverse employment action is a tangible change in working conditions that

produces a material employment disadvantage.  This might include termination, cuts in pay

or benefits, and changes that affect an employee's future career prospects, as well as

circumstances amounting to a constructive discharge."  Wilkie v. Dep't of Health & Human

Servs., 638 F.3d 944, 955 (8th Cir. 2011) (quotation omitted).  However, "[m]inor changes

in duties or working conditions, even unpalatable or unwelcome ones, which cause no

materially significant disadvantage, do not rise to the level of an adverse employment

action."  Id.

Ingraham contends that actions such as the requirement that she move to a different

office building constituted adverse employment actions.  But Ingraham did not lose pay,

benefits, seniority, or her TDM position.  None of the actions she relies on resulted in any

"materially significant disadvantage."  Id.

The only adverse employment action that could possibly support Ingraham's

discrimination claim is her assertion that she was constructively discharged.  Again,

however, she has not pointed to any facts that would allow a jury to conclude that she was

in fact constructively discharged.  "To establish a claim for constructive discharge, the

plaintiff must show that the employer 'deliberately create[d] intolerable working

conditions with the intention of forcing the [plaintiff] to quit.'"  Coffman, 141 F.3d at 1247

9

(quoting Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996)).  The working

conditions must be intolerable to a reasonable person.  Anda v. Wickes Furniture Co., 517

F.3d 526, 534 (8th Cir. 2008).  "This burden is substantial."  O'Brien v. Dep't of Agric.,

532 F.3d 805, 810-11 (8th Cir. 2008) (quotation omitted).

Although Ingraham contends that she had a poor relationship with her supervisor

and claims that he was forcing her to relocate her office, neither of these suffice to establish

intolerable working conditions.  Moreover, given that Ingraham "premises her constructive

discharge claim on the same allegations [] found insufficient to establish a hostile work

environment," her constructive-discharge claim fails.  Id. at 811.

Even if Ingraham's medical leave and decision to take early retirement could be

interpreted as a constructive discharge, Ingraham's discrimination claim fails because she

has raised no question of fact as to whether the discrimination was "because of" her sex.

Crediting her interpretation that her supervisors' actions were targeted at her, there is

nothing in the record that would allow a factfinder to conclude that her supervisors' actions

were in any way tied to Ingraham's sex.  Ingraham repeatedly mentions that she and her

assistant TDM were the only all-female TDM team in the nation, but this fact is insufficient

to establish the but-for causation Title VII requires.

Moreover, Ingraham does not point to any other male TDM who performed as she

did and was not criticized or treated in a similar fashion.  She mentions the last names of

three "comparator males" (Docket No. 34 at 34) but otherwise does not discuss these

alleged comparators at all – there is no indication of their job titles, where they worked,

10

who their supervisors were, or whether their performance was similar to Ingraham's.[2]   It is

Ingraham's burden to show that alleged comparators are "similarly situated [to her] in all

relevant respects."  Maras v. Curators of the Univ. of Mo., 983 F.3d 1023, 1029 (8th Cir.

2020); see also Evance v. Trumann Health Servs., LLC, 719 F.3d 673, 678 (8th Cir. 2013)

("[T]he individuals used for comparison must have dealt with the same supervisor, have

been subject to the same standards, and engaged in the same conduct without any

mitigating or distinguishing circumstances.") (quotation omitted).   She has not done so.

Absent evidence that similarly situated males were not treated the same, her discrimination

claim fails.

Finally, Ingraham contends that she can establish an adverse action by the

"cumulative effects" of the alleged discriminatory conduct.  All of the authority on which

she relies for this "cumulative effect" theory, however, presented "particularly extreme

set[s] of facts" that are not present here.  Higgins v. Gonzales, 481 F.3d 578, 588 (8th Cir.

2007).  For example, in Phillips v. Collings, 256, F.3d 843 (8th Cir. 2001), "a supervisor

prepared a four-page evaluation of the plaintiff in which she recommended termination

specifically based, in part, on his religious beliefs. . . .  In response [to a revision to this

evaluation], the supervisor drafted a new, fifty-three page evaluation criticizing virtually

every aspect of [the plaintiff's] job performance."  Higgins, 481 F.3d at 588.  The Court of

---

[2] At the hearing, Ingraham's counsel expounded on the alleged comparator male
employees.  But the time to present comparator evidence was in the briefing on the Motion,
not at the hearing when the opposing party has no opportunity to respond.  And in any
event, there is no evidence in the record that any of these alleged comparators were
"similarly situated to [Ingraham] in all relevant respects."  Maras v. Curators of the Univ.
of Mo., 983 F.3d 1023, 1029 (8th Cir. 2020).

Appeals concluded that the supervisor "did everything she could to disrupt [the plaintiff's] employment" and that, had her plans been implemented, "they would signify a tangible change in [the plaintiff's] duties or working conditions" sufficient to support a Title VII religious discrimination claim. Phillips, 256 F.3d at 849. Similarly, in Kim v. Nash Finch Co., 123 F.3d 1046 (8th Cir. 1997), after complaining of age and race discrimination, the plaintiff experienced "serious employment consequences that adversely affected or undermined [his] position." Higgins, 481 F.3d at 588. Such "systemic retaliatory conduct collectively constituted an adverse employment action." Id. (quotation omitted.)

Here, even taken cumulatively, the adverse actions of which Ingraham complains do not rise to the level of a material disadvantage to support her Title VII claims. At best, Ingraham contends that she was treated differently than she had been in the past, not that she suffered a tangible change in any aspect of her job.

Ultimately, even if Ingraham had established that the cumulative effect of her employer's actions was a material disadvantage, her discrimination claim would still fail because "there is nothing here to indicate that [the complained-of actions were] based on [Ingraham's] sex in any way." Maras, 983 F.3d at 1029. Thus, "no reasonable factfinder could conclude that [her] sex contributed at all" to the challenged actions. Id. Summary judgment on Ingraham's discrimination claim is appropriate.

**C.     Retaliation**

Ingraham contends that she was retaliated against in a plethora of ways, claiming that nearly every decision or action the FAA took in the 14 months after Ingraham filed her charge related to Arel's comments was retaliatory.

"To establish a prima facie case of retaliation, an employee has the initial burden of establishing retaliation by showing that (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct." Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013).   To establish the final element Ingraham must demonstrate that her employer's desire to retaliate was the but-for cause of all of the alleged retaliatory actions she suffered. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).

Ingraham has established that she engaged in protected conduct.  She has not established, however, any adverse employment action or, even assuming that the numerous alleged adverse actions qualify as such, that any of them were causally connected to that protected conduct.

There is no dispute that the FAA did not cut Ingraham's pay or benefits, nor did it change her job duties or responsibilities.  And as discussed above, she has failed to establish that she was constructively discharged.  At most, the incidents of which she complains are minor changes or inconveniences and caused no materially significant employment disadvantages.  Her retaliation claim fails at the second element.

Even assuming that the conduct she alleges rises to the level of an adverse employment action, however, she has again failed to show the requisite causation.  There

is simply nothing in the record to support Ingraham's belief that the allegedly adverse actions were in any way related to her discrimination complaint.  Indeed, Defendant has presented unrebutted evidence that the two decisionmakers about whom Ingraham complains most vociferously, Bialek and Litke, were not even aware of Ingraham's discrimination complaints until after they took many of the ostensibly retaliatory actions. Ingraham may disbelieve their testimony in this regard, but she has no evidence to the contrary.  And mere temporal proximity is in any event rarely sufficient to provide the required causal link.  Scroggins v. Univ. of Minn., 221 F.3d 1042, 1045 (8th Cir. 2000). Summary judgment is appropriate on Ingraham's retaliation claim.

**CONCLUSION**

No genuine issues of fact remain to be resolved on Plaintiff's claim and Defendant is entitled to judgment as a matter of law.  Accordingly, **IT IS HEREBY ORDERED that** Defendant's Motion for Summary Judgment (Docket No. 24) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 28, 2022

s/Paul A. Magnuson

Paul A. Magnuson
United States District Court Judge